FILED

2014 Sep-15  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| FCCI INS. CO., | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:13-cv-00372-LSC |
| | ) | |
| CAPSTONE PROCESS SYS., | ) | |
| LLC, et al., | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OF OPINION

The Court has before it two motions for summary judgment. Defendants Capstone Process Systems, LLC ("Capstone") and Nu-West Industries, Inc. ("Nu-West") have moved for summary judgment on all claims asserted against them. (Doc. 24). Plaintiff FCCI Insurance Company ("FCCI") has also moved for summary judgment on all counts, (Doc. 26), and made a motion to strike certain evidence submitted in support of the Defendants' motion for summary judgment. (Doc. 31). For the reasons stated below, FCCI's motion for summary judgment is due to be GRANTED, while Defendants' motion is due to be DENIED. FCCI's motion to strike is due to be DENIED as moot.

I.      Background

The facts in this case have been almost entirely stipulated. To the extent inferences may be drawn from the facts, the Court will view all facts and make inferences in the light most favorable to the non-moving party on each motion.

Nu-West is an agricultural company located in Idaho, while Capstone is a company specializing in rubber and rubber installation based in Alabama. In January of 2008, Nu-West determined that one of its machines, referred to in this litigation as the "Vessel," needed to be re-rubbered. Nu-West contracted with Capstone to perform the work.

In the contract, Capstone agreed to provide and install the rubber, provided warranties for the goods and services involved, and agreed to complete the work in June 2008. As provided for in the contract, Capstone began to work on the Vessel in June. Evidence, including Capstone's own cure sheets, suggests that Capstone undercured the rubber. Capstone left the premises on June 29, and after reassembling the Vessel Nu-West attempted to put it back into service on July 4. On July 7, 2008, the rubber failed, and the Vessel had to be shut down.

Capstone was contacted about the rubber failure and returned to re-rubber the Vessel at their own expense, this time curing the rubber for a longer time and at a higher temperature. Capstone completed this process near the end of July, and the

Vessel was put back into service on or about August 7, 2008. The second installation of the rubber was successful.

During the time the Vessel was inoperable, Nu-West was unable to manufacture as much super phosphoric acid, or "SPA," as it would have had the vessel been in service. Nu-West has submitted expert reports that the temporary loss of use of the Vessel caused over $3 million in lost profits.

At all times relevant to this litigation, Capstone carried a commercial general liability policy ("CGL policy") with FCCI. In relevant part, "Coverage A" of the CGL policy provides coverage for "Bodily Injury and Property Damage Liability," while "Coverage G" of the General Liability Advantage Endorsement to the policy covers contractor liability.

In March of 2009, Capstone notified FCCI of the dispute it had with Nu-West concerning the installation of rubber on the Vessel. FCCI issued a reservation of rights letter and investigated the claim. FCCI eventually provided a defense for Capstone, but reserved all available rights and defenses, including expressly reserving the right to file a declaratory judgment action to determine its obligations under the policy.

Nu-West brought suit against Capstone over the faulty rubber work in the U.S. District Court for the District of Idaho on June 28, 2011, alleging both breach of contract and breach of warranty. That case settled in November of 2013. FCCI then

brought this action to determine whether it was required to indemnify Capstone for the cost of the settlement.

## II.    Standard of Review

Summary judgment is appropriate " if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is " material" if it " might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a " genuine dispute" as to a material fact " if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by " considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F. 3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, " the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions

for summary judgment, " [s]ummary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The fact that there are cross-motions for summary judgment does not change the standard. Even though both sides allege that no genuine issue of material fact exists, the Court must still evaluate each motion under the Rule 56 standard, determining whether either party has established that it is entitled to judgment as a matter of law. *See Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 824 (11th Cir. 1984). The Court has considered each motion in the light most favorable to the opposing party in order to determine whether the Rule 56 standard has been met. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

## III.   Discussion

In a declaratory judgment action under Alabama law, the insured bears the burden of establishing that a claim is covered by the policy. *See Colonial Life & Acc. Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967). The burden is also on the insured to prove that coverage existed within the terms of the policy. *Ala. Hosp. Ass'n Trust v. Mutual Assur. Soc. of Ala.*, 538 So. 2d 1209, 1216 (Ala. 1989). The burden is on the insurer to prove the applicability of any policy exclusion. *See Bankers Fire and Marine Ins. Co. v. Contractors Equip. Rental Co.*, 159 So. 2d 198, 201 (Ala. 1963).

FCCI's claim for declaratory judgment is organized into six counts. Count I asserts that there is no coverage because faulty workmanship is not an "occurrence" covered by the policy. Counts II-IV assert that there is no coverage under the policy because various coverage exclusions are applicable. Count V asserts that there is no coverage under Coverage G of the General Liability Advantage Endorsement, both because there was no "occurrence" and because Capstone's only liability is for delay in completing the contract. In the alternative, FCCI asserts that any liability under Coverage G cannot exceed the policy limit of $10,000. Finally, Count VI asserts that there is no coverage under the Follow Form Excess Policy because there is no coverage under the CGL policy itself. Both FCCI and Defendants have moved for summary judgment on all counts.

A.     There was not an "occurrence."

The CGL policy, under Coverage A, provides coverage for damages that result from "bodily injury" or "property damage" caused by an "occurrence." (Doc. 27-7, p. 4). The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," as well as "[l]oss of use of tangible property that is not physically injured." (Doc. 27-7, p. 17-18). An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 27-7, p. 17). FCCI asserts that summary

judgment is proper because any property damage in this case was not the result of an "occurrence," as is required by the policy, but instead resulted from faulty workmanship. Defendants on the other hand contend that summary judgment is proper because there is a covered occurrence in that the damage does not derive from the costs of replacing the faulty workmanship but rather from the loss of use of the Vessel caused by the unintended failure of the rubber.

Under CGL policies such as the one at issue in this case, exclusions and exceptions are implicated only when there is first determined to be an occurrence. *Town & Country Property, LLC v. Amerisure Ins. Co.*, 111 So. 3d 699, 705 (Ala. 2011). The Alabama Supreme Court has determined, when interpreting insurance contracts with identical language, that "faulty workmanship itself is not an occurrence." *Id.* at 706. Phrased in more precise terms, "faulty workmanship itself is not 'property damage' 'caused by' or 'arising out of' an 'occurrence.'" *Owners Ins. Co. v. Jim Carr Homebuilder, LLC*, — So. 3d —, 2014 WL 1270629, at *6 (Ala. Mar. 28, 2014). Insurers are not required to indemnify an insured for the costs of repairing or replacing faulty work. *Town & Country*, 111 So. 3d at 706. However, "faulty workmanship may lead to an occurrence if it subjects personal property or other parts of the structure to "continuous or repeated exposure" to some other "general harmful condition" . . . and, as a result of that exposure, personal property or other parts of the structure

are damaged." *Id.* Whether poor workmanship leads to an occurrence depends on "the nature of the damage" that results from the faulty work. *Owners,* 2014 WL 1270629, at *3.

In *Owners*, the Alabama Supreme Court dealt with a case where the Johnson family hired a contractor to build a new home. *Id.* at *1. After construction was completed and the Johnsons moved in, they began to notice a number of problems with the house relating to water leaking through the roof, walls, and floors that resulted in water damage to several areas of the home. *Id.* The Johnsons brought suit against the contractor. The trial court ultimately found for the Johnsons and determined that the insurer was required to indemnify the contractor under a CGL policy very similar to the one at issue in this case. *Id.* at *2-3. The Alabama Supreme Court determined that while CGL policies were not meant to cover the cost of repairing faulty workmanship, the "definition of the term 'occurrence' does not itself exclude from coverage the property damage alleged," where the faulty work had exposed property to further physical damage. *Id.* at *6. *See also Moss v. Champion Ins. Co.*, 442 So. 2d 26 (Ala. 1983) (finding an occurrence for CGL policy purposes where a contractor's poor work on a roof resulted in not just a poorly made roof, but also damage to the plaintiff's attic, interior ceilings, and some furnishings caused by rain); *U.S. Fid. & Guar. Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569 (Ala. 1982) (holding that negligence in installing

a roof did not prevent there from being an occurrence when it rained and leaked through the roof).

In contrast, in the case of *Shane Traylor Cabinetmaker, L.L.C. v. American Res. Ins. Co., Inc.*, 126 So. 3d 163, 167-68 (Ala. 2013), a contractor produced faulty cabinet and wood work at several properties. It was argued that this faulty work, which had to be repaired and replaced, constituted an "accident" and therefore an occurrence. *Id.* at 168. The Court noted that there were no allegations of additional damage to the properties as a result of the workmanship beyond the cost to repair and replace, and no damage resulting from " 'continuous or repeated exposure' to some *other* 'general harmful condition' (i.e., a condition other than [the contractor's] allegedly defective work)." *Id.* (emphasis in original). The Court also differentiated this situation, which required only the repair or replacement of the contractor's own faulty work, with faulty work that inflicted damage on property beyond what the contractor had worked on. *Id.* at 170. The Court declined to "infer loss of use or other injuries based on speculation as to damage that was not alleged in the counterclaim." *Id. See also United States Fid. & Guar. Co. v. Warwick Dev. Co.*, 446 So. 2d 1021 (Ala. 1984) (insurance policy did not provide coverage for alleged faulty workmanship and noncomplying materials in the construction of plaintiff's residence when the alleged damage was confined to the residence itself because there was no occurrence); *Penn. Nat. Mut. Cas.*

*Ins. Co. v. Snider*, 996 F. Supp. 2d 1173, 1183 (M.D. Ala. 2014) (breach of a construction contract to build a home in a good and workmanlike manner was not an occurrence under a CGL policy; "a CGL policy protects contractors from true unintended accidents, not poor or substandard workmanship, which, although unexpected and certainly unwanted, is not unforeseeable").

The parties do not dispute the fact that Capstone's faulty installation of the rubber alone is not an "occurrence" under Alabama law. However, Defendants assert that the overall accidental failure of the Vessel is an "occurrence" that caused property damage in the form of loss of use of the Vessel during the time that Capstone replaced the rubber at its own expense. However, in this case the only accident or occurrence that could have caused the property damage—the loss of use of the Vessel—is Capstone's faulty workmanship which lead to the failure of the rubber. The Alabama Supreme Court cases that have found an "occurrence" in similar situations involved faulty workmanship that lead to exposure to an additional harmful condition and further damage to the property. *See Owners,* 2014 WL 1270629, at *1; *Moss*, 442 So. 2d at 29; *Bonitz Insulation*, 424 So. 2d at 571. In this case, the only harmful condition was the failure of the rubber installed by Capstone, which necessitated that the Vessel be taken offline and thus resulted in a loss of use. While the policy does define "property damage" to include the loss of use of property that is not physically

damaged, that property damage must still be caused by an "occurrence" under the policy. In this case, the faulty workmanship did not lead to any additional harmful condition; rather, the rubber failure was the only condition that lead to the Vessel being taken offline. The faulty workmanship of Capstone, by itself, is not an occurrence, and therefore the accident is not covered under the policy. Because the faulty workmanship is not covered under Coverage A of the CGL Policy, it is not necessary to address whether the policy exclusions would exclude it from coverage.

B.     Coverage G

Capstone also purchased additional insurance beyond the basic CGL Policy. One such additional piece of coverage is Coverage G, which provides insurance for "Contractors Errors and Omissions Coverage." This provides insurance for those sums "the insured becomes legally obligated to pay as damages due to faulty workmanship, material or design, or products including consequential loss because of an occurrence to which this insurance applies." (Doc. 27-7, p. 31). As Coverage G, like Coverage A, requires an "occurrence," the parties restate their same arguments concerning whether or not the present case involved an "occurrence" under the policy. As discussed above in Section III.A, there was no "occurrence" under the policy according to Alabama law, and therefore there is no coverage under Coverage G as well.

C.     Motion to Strike

FCCI filed a motion to strike certain evidence that was submitted in support of the Defendants' motion for summary judgment. (Doc. 31). However, it was not necessary for the Court to use the evidence at issue in the motion to strike when ruling on the parties' motions for summary judgment. Therefore, the motion is denied as moot.

IV.     Conclusion

For the foregoing reasons, FCCI's motion for summary judgment (Doc. 26) is due to be GRANTED, because there was no "occurrence" and therefore no coverage under the CGL Policy. For the same reason, Defendants' motion for summary judgment (Doc. 24) is due to be DENIED. FCCI's motion to strike certain evidence (Doc. 31) is also due to be DENIED as moot.

A separate order will be entered.

Done this 15th day of September 2014.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177825